**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | Case No. 24-22684-JAD |
| | ) | |
| MICHAEL R. WALKO, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Related to ECF No. 67 & 70 |
| | X | |

**MEMORANDUM OPINION**

**I.
Introduction**

The question before the Court is simple to ask, but harder to answer: may a debtor's chapter 13 plan classify a nondischargeable, unsecured debt for special treatment and pay it in full while paying nothing to his other unsecured creditors?

Congress, in drafting chapter 13 of the Bankruptcy Code (11 U.S.C. § 101 et seq.), told us two things at once. Section 1322(b)(1) provides that a chapter 13 plan may "designate a class or classes of unsecured claims," but also cautions that the plan "may not discriminate unfairly" among them. Those words matter; they permit discrimination, but only the fair kind. They allow debtors flexibility, but forbid debtors from turning that flexibility into inequitable favoritism.

Here, the debtor, Michael R. Walko (the "Debtor") filed an amended chapter 13 plan (*Chapter 13 Plan Dated Jul[y] 14, 2025*, ECF No. 67 (the "Plan")) that proposes to classify for full payment the portion of creditor Caterpillar Financial Services Corporations' (hereinafter "Caterpillar") unsecured claim which is stipulated to be nondischargeable under section 523(a)(6) of title 11. See Plan at

1

Part 5.3 (proposing to pay Caterpillar $27,000 of "arrearage"). Meanwhile, his other unsecured creditors with dischargeable claims receive nothing. The Chapter 13 Trustee (the "Trustee") objects. She argues that paying Caterpillar one hundred percent of its nondischargeable debt while paying all other unsecured creditors nothing is not merely discriminatory; it is *unfairly* discriminatory in a manner the statute forbids. See *Chapter 13 Trustee's Objection to Debtor's July 14, 2025, Plan*, ECF No. 70 (the "Trustee's Objection").

Both sides have briefed the issue. The Debtor insists that his discriminatory treatment of claims is justified because nondischargeable debts, unlike their dischargeable cousins, follow him out of bankruptcy, threatening his fresh start. See *Debtor's Brief in Opposition to Trustee's Objection to Amended Plan date July 14, 2025*, ECF No. 76. ("Debtor's Brief"). The Trustee responds that nondischargeability alone is no justification, that Congress knows how to grant priority when it wishes, and that creating new priorities under the guise of classification undermines the Bankruptcy Code's structure. See *Chapter 13 Trustee's Brief in Support of Her Objection to the Amended Plan Dated July 14, 2025*, ECF No. 77 (the "Trustee's Brief").

The question of unfair discrimination has occupied many courts. As is discussed below, some apply multi-factor tests, others an equality-of-distribution analysis, and still others measure the plan against the "normative baseline" of chapter 13. The words differ, but the meaning converges: discrimination is not forbidden *per se*, but it cannot be arbitrary, disproportionate, or inconsistent with the priorities Congress enacted.

2

Applying those principles, this Court concludes that the Debtor's Plan discriminates unfairly. Nondischargeability, by itself, provides for survival of the debt post-bankruptcy, but not superiority. It permits collection after discharge, not preference before it. In this case, the Debtor's Plan fails to show necessity, proportionality, or good-faith justification for such unequal treatment. Accordingly, the Trustee's Objection will be sustained, and confirmation of the Plan denied.

## II.
## Factual and Procedural Background

The relevant facts are not in dispute. The Debtor filed his chapter 13 petition on October 31, 2024. His financial difficulties arose largely from a default judgment obtained by Caterpillar in the Court of Common Pleas of Westmoreland County. That judgment entitled Caterpillar to repossess certain heavy equipment and granted it a money judgment for the deficiency balance. See Debtor's Brief at 2.

Among the equipment at issue were a Caterpillar 953C Track Loader and a Caterpillar 289D Compact Track Loader. The Debtor sold one of the units without Caterpillar's consent. See Debtor's Brief at 3. On that basis, Caterpillar commenced an adversary proceeding seeking to determine that its claim was nondischargeable under section 523(a)(6) of title 11 for willful and malicious injury to property. The parties ultimately consented to entry of a judgment by which $27,000 of Caterpillar's claim was rendered nondischargeable.[1]

---

[1] Caterpillar filed a *Proof of Claim*, docketed on the Claims Register as "Claim 7," in the amount of $121,835.40. Of this amount, Caterpillar alleged that $56,900.00 of the total debt is secured, and the remaining $64,935.40 is unsecured.

3

The Debtor's proposed Plan calls for sixty monthly payments of $1,370. Under the Plan, the Debtor will pay:

(1) Capital One Auto Finance $607.34 per month on a secured claim for a 2016 Ford F-250;
(2) Snap-On-Credit $41.11 per month on a secured claim for tools;
(3) Attorney's fees of $529.41 per month (for an amount totaling $3,550);
(4) The nondischargeable portion ($27,000) of Caterpillar's unsecured claim; and
(5) Nothing—($0.00)—on the remaining $43,336 in dischargeable unsecured claims.

The Trustee objects, arguing that the Plan discriminates unfairly against unsecured creditors holding dischargeable claims. If all unsecured creditors were to share *pro rata*, they would receive approximately 35.8 percent of their claims. See Trustee's Brief at 9-10. The Plan does not provide for that. Rather, insofar as dividends to general unsecured creditors are concerned, all of that funding flows to Caterpillar.

### III.
### Legal Landscape

The starting point is always the text of the Code. Section 1322(b)(1) of the Bankruptcy Code provides that a chapter 13 plan may "designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated[.]" 11 U.S.C. § 1322(b)(1).

---

*Proof of Claim* § 9. On May 30, 2025, a *Consent Motion for Entry of Judgment* signed by Debtor and Caterpillar was filed in Adversary Case 25-02015-JAD. ECF No. 14. On June 2, 2025, this Court entered the *Judgment*, pursuant to which $27,000 of the debt to Caterpillar was deemed nondischargeable under 11 U.S.C. § 523(a)(6). Adversary No. 25-02015-JAD, ECF No. 15.

4

The phrase "may designate" grants flexibility; "may not discriminate unfairly" imposes restraint. Congress could have forbidden all discrimination, but it did not. It allowed different treatment when fair.

The Bankruptcy Code already delineates a priority structure among unsecured claims, which includes claims for domestic support obligations, administrative expenses, certain wages, certain taxes, and the like. See 11 U.S.C. § 507(a). Notably absent from this structure are nondischargeable, unsecured debts of the sort at issue here. Congress could have included them, but did not. That omission is significant. Cf. Bentley v. Boyajian (In re Bentley), 266 B.R. 229, 240 (B.A.P. 1st Cir. 2001)("fairness in Chapter 13 requires equality of distribution among nonpriority unsecured creditors, and the burden of justification is on those who propose plans to the contrary").

Section 1322(b)(1) thus functions as a safety valve. It gives debtors limited room to craft classifications necessary to carry out a plan, such as maintaining payments on a co-signed consumer debt to protect a family member, but it does not authorize creation of new priorities. See id. at 241; In re Janssen, 220 B.R. 639, 644 (Bankr. N.D. Iowa 1998)(maintaining a familial relationship is reasonable basis for discrimination). To draw the line between fair and unfair discrimination, courts must therefore look to the Bankruptcy Code's overall structure and purposes.

Because "unfair discrimination" is not defined, courts have developed various tests. For example, the Eighth Circuit's decision in J.J. Mickelson v. Leser (In re Leser), 939 F.2d 669 (8th Cir. 1991), adopting the four-factor test

5

from <u>Amfac Distrib. Corp. v. Wolff (In re Wolff)</u>, 22 B.R. 510 (B.A.P. 9th Cir. 1982), remains widely followed. Under that approach, courts examine;

> (1) whether the discrimination has a reasonable basis, (2) whether the debtor can carry out a plan without the discrimination, (3) whether the discrimination is proposed in good faith, and (4) whether the degree of discrimination is directly related to its rationale.

<u>In re Leser</u>, at 672.

The Seventh Circuit, in <u>In re Crawford</u>, 324 F.3d 539 (7th Cir. 2003), adopted a pragmatic and purposive approach to the statutory prohibition against unfair discrimination. The court instructed that a bankruptcy judge should "seek a result that is reasonable in light of the purposes of the relevant law[,]" recognizing that the concept of fairness in chapter 13 defies precise definition. <u>Id</u>. at 542. Emphasizing that chapter 13 is intended to protect both debtors and creditors, the court held that it would be unreasonable to approve a plan that fully pays a nondischargeable debt while leaving other creditors with nothing. <u>Id</u>. at 543. The court further noted that discrimination favoring a nondischargeable claim arising from the debtor's own criminal fraud would be particularly objectionable. <u>Id</u>. Ultimately, the Seventh Circuit cautioned that discrimination among creditors "may not [be used] to deny consideration of the legitimate interest of creditors in repayment." <u>Id</u>. at 542.

The First Circuit Bankruptcy Appellate Panel's decision in <u>In re Bentley</u>, <u>supra</u>., refined the inquiry. It rejected a rote application of multi-factor tests (including the <u>Leser</u> test) and instead examined whether the plan departs from the "normative baseline" of chapter 13 (i.e., what unsecured creditors would

6

otherwise receive under the best-interests and disposable-income tests). See Bentley, 266 B.R. at 239. According to the Bentley court, departures are fair if they leave the disfavored class no more burdened than necessity requires and rationally advance a legitimate purpose of the Bankruptcy Code, but unfair when they reallocate benefits among equals. See id. at 240 & 243 (also observing that "[w]here a plan redistributes benefits and burdens to the debtor's benefit and the unsecured creditors' detriment . . . it can remain fair only if the debtor 'plac[es] something material onto the scales to show a correlative benefit to the other unsecured creditors.'" (quoting McCullough v. Brown (In re Brown), 162 B.R. 506, 517-18 (N.D. Ill. 1993))).

Subsequent courts have followed Bentley. See In re Orawsky, 387 B.R. 128 (Bankr. E.D. Pa. 2008)(nondischargeability alone does not justify discrimination); In re Jordahl, 516 B.R. 573 (Bankr. D. Minn. 2014), aff'd, 539 B.R. 567 (B.A.P. 8th Cir. 2015)(distinguishing reasonable bases for allowing separate treatment of nondischargeable debt).

Some older decisions approved modest discrimination favoring student loans. See In re Whitaker, 113 B.R. 531 (Bankr. D. Minn. 1990); In re Tucker, 159 B.R. 325 (Bankr. D. Mont. 1993). However, unlike the Plan proposed in this matter, those debtors paid something to the other unsecured creditors—not nothing. These cases are therefore distinguishable and of limited contemporary relevance.

## IV.
## Discussion

Measured against these standards, the Plan proposed by the Debtor cannot be confirmed.

The Debtor's only justification for separate classification is that Caterpillar's debt is nondischargeable. That, without more, is insufficient. See Crawford, 324 F.3d at 542-43; Bentley, 266 B.R. at 240.

The record before the Court is that the Chapter 13 Trustee concedes that the Plan is feasible without discrimination. See Trustee's Brief at 7-8. Nothing prevents the Debtor from paying all unsecured creditors *pro rata*. See id. at 8. The only effect of the proposed classification is to shift the cost of the Debtor's willful misconduct onto other innocent creditors. That is, the basis of this proposed discrimination is not necessity; it is a benefit to the Debtor.

Good faith is also lacking. Chapter 13 exists to help the honest but unfortunate debtor, not to let a debtor insulate himself or herself from the consequences of deliberate wrongdoing. See also Coastal Credit, L.L.C. v Mellors (In re Mellors), 372 B.R. 763, 772 (Bankr. W.D. Pa. 2007)(citing In re Taylor, 243 B.R. 226, 229 (Bankr. W.D.N.Y. 2000)("an absence of good faith may lay in seeking to extract too many benefits from the Chapter 13 process at a creditor's expense")). To prefer a debt arising from willful and malicious injury while paying nothing to equally situated and innocent creditors contravenes that spirit.

The degree of discrimination is also excessive. Caterpillar receives one hundred percent of the nondischargeable portion of its claim (which is in effect

a 41.57 percent distribution of its total unsecured claim); the other unsecured creditors receive nothing.[2] Even cases approving modest preference involved partial payments to the disfavored class. See In re Kalfayan, 415 B.R. 907 (Bankr. S.D. Fla. 2009)(allowing separate classification of student loan debt where debtor's income was dependent on medical license and discrimination was necessary to avoid jeopardizing payments to unsecured creditors). Here the disparity is total.

Finally, the Debtor's reliance on the "fresh start" policy is misplaced. That policy extends only to dischargeable debts and is designed to protect the honest but unfortunate debtor—not to shield one from the consequences of willful misconduct. Congress expressly excluded debts for willful and malicious injury from discharge. See 11 U.S.C. § 523(a)(6). Permitting a debtor to pay a nondischargeable debt at the expense of other unsecured creditors would turn the statute on its head. Early payment of a nondischargeable debt through preferential classification rewards the debtor for his misconduct rather than holding him to account for it. If the Debtor's theory were accepted, it would be the innocent creditors, not the wrongdoer, who bear the cost of the Debtor's misconduct. Such a shifting of responsibility is inherently inequitable and cannot be justified absent some other reasonable basis for discrimination

---

[2] Under the proposed Plan, Caterpillar would receive in full the nondischargeable portion of its unsecured claim. Caterpillar would not receive a distribution on the remainder of its unsecured claim ($37,935.40) and a small amount of other unsecured creditors would receive nothing as well. Just because the "others" hold claims that are much smaller than Caterpillar's does not obviate the unfairness—rather it magnifies it. Creditors holding smaller claims do not have the economic incentive to participate in these proceedings, which in-turn exemplifies the Trustee's duty and the Court's independent obligation to scrutinize the fairness of what is being proposed.

consistent with chapter 13's structure and the overarching duty of good faith. See Bentley, 266 B.R. at 236 ("[P]riority does not *per se* confer or entail nondischargeability; and nondischargeability does not *per se* confer or entail priority")(italics in original).

The Court is mindful that chapter 13 reflects balance. It offers honest but unfortunate debtors the chance to reorganize their finances, but also requires them to make best efforts and to treat creditors equitably. In re Chandler, 210 B.R. 898, 902 (Bankr. D.N.H. 1997) (in Bankruptcy Code, principle of equal treatment of creditors is as important as providing fresh start). Congress knew how to prioritize nondischargeable debts but did not do so. Courts may not rewrite the Bankruptcy Code to provide what Congress did not. Lamie v. U.S. Trustee, 540 U.S. 526, 538 (2004)(discussing the inability of courts to re-write the words chosen by Congress).

Counsel for the Debtor's argument in support of the Plan confuses the concept of flexibility with license. Section 1322(b)(1) gives the Debtor discretion, but it is not unlimited or unbounded. Equality of distribution among creditors similarly situated remains the baseline. Plans departing from that principle must rest on a clear, Bankruptcy Code-based justification.

Here, the Debtor has shown none. The discrimination proposed by the Debtor's Plan is absolute, and the justification is virtually nonexistent. On this basis, confirmation of the Plan must be denied.

To be clear, the Court today does not hold that every plan treating a nondischargeable claim differently must fail. Congress provided room for fair

10

discrimination, and there may be circumstances where such treatment passes muster.

Imagine a different plan, one in which the debtor pays post-petition interest on the nondischargeable claim during the life of the plan, leaving all or some of the principal balance to survive the discharge, while devoting all other disposable income to a *pro rata* distribution for unsecured creditors. Such a structure could potentially be viewed as proportional, rational, and consistent with chapter 13's rehabilitative purpose.

The Court makes this observation because courts have long recognized that section 502(b)(2) disallows post-petition interest as part of an allowed claim, yet interest on nondischargeable debts continues to accrue outside bankruptcy. Bruning v. United States, 376 U.S. 358, 360 (1964). A plan that services the accruing interest could be proportional (and fair) discrimination that fosters the fresh start and prevents that nondischargeable debt from growing during the case without creating an impermissible priority. That type of classification might demonstrate good faith and best efforts, ensuring all unsecured creditors share in the debtor's income while addressing legitimate rehabilitative concerns. Whether such a plan would satisfy section 1322(b)(1) would depend on the evidence and totality of circumstances, but it would at least reflect proportion and necessity. That, however, is not the Debtor's Plan. His proposal seeks to pay the nondischargeable portion of Caterpillar's unsecured claim in full (which amounts to a significant overall distribution of its total unsecured claim), while leaving every other unsecured creditor empty-handed. The classification benefits

only the Debtor, not the estate, and penalizes innocent creditors to compensate for the Debtor's willful injury to Caterpillar's collateral. That is not fairness; it is an excessive and unreasonable preference.

## V.
## Conclusion

This case, though resolved on its particular facts, implicates a recurring question: when does separate classification of unsecured claims cross the line from fair to unfair discrimination? Because that question will arise again, the Court offers the following guidance for future cases before the undersigned.

The starting point is equality. Chapter 13 presumes that unsecured creditors of equal rank share alike in the debtor's disposable income. That presumption, reflected in sections 507, 1322(a)(3), and 1325(a)(4), forms the baseline against which all discrimination must be measured.

But equality is not an iron rule. Congress expressly authorized debtors to "designate a class or classes of unsecured claims," provided the plan "does not discriminate unfairly." 11 U.S.C. § 1322(b)(1). The phrase "may not discriminate unfairly" presupposes that some discrimination is permissible. The question, then, is not whether one creditor is worse off (because every classification necessarily makes someone worse off), but whether the disparity is justified by a legitimate, Bankruptcy Code-based purpose and is no greater than necessary to achieve it.

A plan discriminates fairly when:

(1) the classification serves a legitimate purpose consistent with the Bankruptcy Code's structure (such as protecting a co-debtor, preserving the debtor's employment, or preventing a nondischargeable obligation from expanding during the plan term);
(2) the discrimination is necessary to accomplish that purpose or to render the plan feasible;
(3) the degree of discrimination is no greater than necessary to accomplish that end and bears a rational, proportionate relation to it; and
(4) the plan is proposed in good faith within the meaning of section 1325(a)(3).

The debtor, as plan proponent, bears the burden of proving by a preponderance of the evidence that any discrimination is fair under section 1322(b)(1). See In re Jordahl, 516 B.R. at 577.

By contrast, discrimination is unfair when it:

(1) rests solely on the nondischargeable character of the favored debt;
(2) creates a *de facto* priority among equals without a statutory basis;
(3) diverts all or substantially all of the debtor's disposable income to one creditor for reasons of convenience or preference rather than necessity; or
(4) penalizes innocent creditors to compensate for the debtor's own misconduct.

This framework recognizes that every instance of discrimination produces some disparity but demands that such disparity be made in good faith, and is rational, proportionate, and anchored in the Bankruptcy Code's design. As the courts in Bentley, Orawsky, and Crawford, supra., have recognized, "unfair" discrimination occurs not when classes are treated differently, but when that difference lacks necessity or proportionality.

The Court's task, then, is not to follow its sympathies but to measure justification against the statute's architecture. While section 1322(b)(1) grants

13

flexibility, fairness in this context is a matter of reasoned fidelity to Congress's words and the equality of distribution that undergirds the bankruptcy system.

As applied here, that principle requires that confirmation of the Debtor's Plan must be denied. But it also leaves space for the honest but unfortunate debtor who acts in good faith and channels his or her best efforts toward a legitimate rehabilitation. A plan that differentiates for sound reasons, confines the disparity to what necessity requires, and aligns with the Bankruptcy Code's design will meet the test of fairness and will be confirmed.

For the reasons set forth above, the Trustee's Objection is therefore sustained. Confirmation of the Plan is denied. An appropriate Order shall be issued.

Date: November 10, 2025

                                                            The Honorable Jeffery A. Deller
                                                            United States Bankruptcy Judge

Case Administrator to Mail to:

Debtor
Rodney D. Shepherd, Esq.
Ronda J. Winnecour, Chapter 13 Trustee
Office of the United States Trustee

FILED
11/10/25 1:03 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA